**SO ORDERED.**

**SIGNED this 02 day of April, 2007.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| ALMONT SHIPPING COMPANY, | 06-00944-8-JRL |
| Debtor. | Chapter 11 |

### ORDER

The matter before the court is the debtor's objection to the claim of Old Wilmington Harbour, LLC ("Old Wilmington"). On March 21, 2007, the court conducted a hearing in Wilson, North Carolina.

On September 8, 2005, the debtor entered a Real Estate Purchase and Sale Agreement ("the Agreement") with Trask Land Company, LLC ("Trask"), to purchase certain parcels of real estate located in Wilmington, North Carolina. Significantly, paragraph 8 of the Agreement stated that the purchaser would have the opportunity to enter the property to inspect it until January 1, 2006. The inspection period is known as the "Review Period" under the Agreement. On September 15, 2005, Trask assigned all of its rights and obligations under the Agreement to Old Wilmington. On December 5, 2005, the debtor and Old Wilmington entered a first amendment to the Agreement. The first amendment extended the Review Period to February 1, 2006. On January 9, 2006, the debtor

1

and Old Wilmington entered a second amendment, and the second amendment extended the Review Period to February 15, 2006.

On February 15, 2006, the debtor and Old Wilmington entered a third amendment. Paragraph 8 of the third amendment states that, if certain conditions were not met within the Review Period, then Old Wilmington could recover a portion of its due diligence costs. The amended language, in pertinent part, reads as follows:

> Seller shall obtain as soon as possible but no later than February 28, 2006 a standstill agreement ("Standstill Agreement") from River Ventures, LLC ("River") in a form reasonably satisfactory to Purchaser whereby River (a) agrees to not exercise any option or other right which River may have to purchase all or any portion of the Property until March 16, 2006, provided that this Agreement is still in force and effect, and (b) agrees to terminate at the time of Closing such option or other right to purchase all or any portion of the Property being sold to Purchaser at Closing. Purchaser shall cooperate and assist Seller, but at no cost to Purchaser, in this effort to obtain the Standstill Agreement from River. **Notwithstanding any other provision of this Agreement, should Seller fail to obtain such Standstill Agreement within the specified time period, or fail to obtain the executed purchase agreement from PPD for PPD Out Parcels 1 and 2 (the "PPD Purchase Agreement") on or before February 28, 2006, which failure shall not be deemed a default by Seller of this Agreement, Purchaser may terminate this Agreement by written notice given to Seller on or before the expiration of the Review Period and recover from Seller the portion of Purchaser's due diligence costs incurred as of the date of such termination up to a maximum amount of $100,000.00. Notwithstanding any other provisions of this Agreement, should Purchaser fail to obtain the executed purchase agreement from CSX for the two parcels described on Exhibit A attached to the Second Amendment ("CSX Parcels") (the "CSX Purchase Agreement," and collectively with the PPD Purchase Agreement the "Related Purchase Agreements") on or before February 28, 2006, which failure shall not be deemed a default by Seller of this Agreement, Purchaser may terminate this Agreement by written notice given to Seller on or before the expiration of the Review Period and recover from Seller the portion of Purchaser's due diligence costs incurred as of the date of such termination up to a maximum amount of $100,000.00** (emphasis added).

In addition, under paragraph 12 of the third amendment, the Review Period changed from a date certain to a date triggered by a number of contingencies. The pertinent language states:

2

> The Review Period shall be deemed to have expired on the later of (a) February 15, 2006, (b) the date on which the Standstill Agreement and the Related Purchase Agreements have all been executed by all appropriate parties, or (c) the date on which Purchaser gives Seller the CSX and PPD Environmental Notice.

On March 6, 2006, a meeting was held whereby Raiford Trask, Manager of Old Wilmington, stated that Old Wilmington was having trouble obtaining financing for the job. However, Mr. Trask advised that Old Wilmington wanted to continue the deal by bringing in partners, representatives of which were present at the meeting. The debtor asserts that Old Wilmington's representations made at the meeting that it lacked financing to complete the deal amounted to an anticipatory breach of the Agreement. Under North Carolina law, "[i]n order to maintain a claim for anticipatory breach, the words or conduct evidencing the renunciation or breach must be a 'positive, distinct, unequivocal and absolute refusal to perform the contract' when the time fixed for it in the contract arrives." Allen v. Weyerhaeuser, Inc., 95 N.C.App. 205, 209, 381 S.E.2d 824, 827 (1989)(quoting Edwards v. Proctor, 173 N.C. 41, 44, 91 S.E. 584, 585 (1917)). The evidence presented at the hearing supports that, at the March 6, 2006 meeting, Old Wilmington did not express a positive, distinct, unequivocal and absolute refusal to perform the contract; rather, it stated that it wanted to move forward with the deal by bringing in partners as an additional source of funding. There was no financing contingency in the Agreement, and the court finds that Old Wilmington's representations did not amount to an anticipatory breach. Moreover, the debtor and Old Wilmington entered into a fourth amendment on March 13, 2006 that ratified the terms of the original agreement and its amendments. Pursuant to the fourth amendment, the closing of the purchase and sale of the subject property was extended to "on or before March 24, 2006." Old Wilmington terminated the Agreement on March 24, 2006.

On March 30, 2006, the debtor filed for relief under Chapter 11. On June 26, 2006, Old

Wilmington filed its proof of claim for $100,000.00, representing the portion of its due diligence costs to be recovered pursuant to the third amendment of the Agreement. Exhibit B of the proof of claim reflects that Old Wilmington's due diligence costs exceeded $100,000.00 and totaled $173,656.40.

If the debtor did not obtain the Standstill Agreement from River by February 28, 2006, obtain the executed purchase agreement from PPD for PPD Out Parcels 1 and 2 by February 28, 2006, or obtain an executed purchase agreement from CSX for the CSX parcels by February 28, 2006, then Old Wilmington was entitled to collect its due diligence costs up to $100,000.00 so long as it terminated the Agreement by written notice on or before the expiration of the Review Period. The debtor did obtain two Standstill Agreements from River prior to the February 28, 2006 deadline. Even though both Standstill Agreements expired before the closing date, the court finds that the debtor fulfilled its obligation by obtaining a Standstill Agreement prior to February 28, 2006.

The debtor did not obtain the executed purchase agreement for the PPD Out Parcels by the February 28, 2006 deadline. The evidence supports that the debtor negotiated an agreement acceptable to PPD for the sale of the PPD Out Parcels, and the debtor's attorney emailed the proposed agreement to Old Wilmington's attorney on February 20, 2006. Old Wilmington's attorney did not respond to the email. Although no agreement was executed by February 28, 2006, the debtor argues that it fulfilled its responsibilities by providing Old Wilmington the drafted agreement eight days prior to the February 28, 2006 deadline. Old Wilmington asserts that it did not approve the proposed PPD purchase agreement because it did not receive the environmental assessment of the PPD Out Parcels until March 2006. Old Wilmington contends that, as a prudent purchaser, it wanted to assess the environmental conditions before signing the agreement. The court finds Old

Wilmington's position to be reasonable.

The debtor also did not meet its obligation to obtain an executed purchase agreement for the CSX parcels by the February 28, 2006 deadline. As for the CSX purchase agreement, the debtor's attorney emailed a draft purchase agreement on February 22, 2006 to Old Wilmington's attorney. Old Wilmington's attorney provided no response to the email. The proposed CSX purchase agreement contained an indemnification provision whereby, just to obtain a right of entry to access the premises for assessing the land's condition, Old Wilmington would have to indemnify CSX. Old Wilmington's attorney advised it against signing such agreement, finding the indemnification terms to be unreasonable. Old Wilmington and its consultants never had access to the property. The court finds that it was reasonable for Old Wilmington to want to assess the condition of the property before signing any purchase agreement and that the indemnification provision for accessing the land was unreasonable.

Because the debtor did not fulfill its obligations to obtain executed purchase agreements for the PPD Out Parcels and CSX parcels by February 28, 2006, Old Wilmington was entitled to collect its due diligence costs up to $100,000.00 so long as it terminated the Agreement by written notice on or before expiration of the Review Period. As noted above, the Review Period expired on the later of: February 15, 2006; the date on which the Standstill Agreement and the Related Purchase Agreements were all executed by all appropriate parties; or the date on which the Purchaser gave the Seller the CSX and PPD Environmental Notice.

Clearly, the first expiration date of February 15, 2006 had passed by the time Old Wilmington terminated the Agreement. The second expiration date, however, had not passed. The Related Purchase Agreements, which include the PPD and CSX purchase agreements, had not been

5

executed. The court finds that Old Wilmington acted reasonably by not signing the PPD purchase agreement without being able to first see the environmental assessment of the PPD Out Parcels. The court also finds that Old Wilmington acted reasonably by not signing the CSX purchase agreement when it was unable to even access the land to assess its conditions without first having to indemnify the owner. As noted by the debtor, paragraph 13 of the original contract states that the purchaser will take the property "as is." Certainly, under those circumstances, a purchaser would want to assess the land's condition before accepting ownership. While Sid Camden, president of the debtor, stated that the debtor was willing to indemnify CSX regarding the environmental condition of the CSX parcels, Old Wilmington's attorney was unaware of those representations and disputed that the email of February 14, 2006 between Charles Case and Bruce McMahon supported such an indemnification arrangement. Moreover, even if the debtor had agreed to indemnify CSX regarding the environmental condition of the subject CSX parcels, it is not clear that such indemnification claim would be paid in bankruptcy.

The third expiration date of the Review Period also had not passed when Old Wilmington terminated the Agreement. Paragraph 3 of the third amendment explains that the CSX and PPD Environmental Notice is a written notice from the purchaser to the seller "stating that the environmental condition of the CSX Land, the PPD Non-Marina Land, and the PPD Marina Land are substantially the same or better than the environmental condition of the Almont Property." Old Wilmington never had access to the CSX Land for assessing its condition in order to provide this type of written notice. Moreover, the court does not find it unreasonable that Old Wilmington refused to indemnify CSX in order to access the land to inspect its environmental condition.

Because neither the second nor third deadline of the Review Period had expired before Old

Wilmington terminated the Agreement on March 24, 2006, Old Wilmington is entitled to due diligence costs of $100,000.00. Based on the foregoing, the debtor's objection to the claim of Old Wilmington is denied.

END OF DOCUMENT